No. 12537

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

A. G. HASH, d/b/a HASH CONSTRUCTION COMPANY,

Plaintiff and Appellant,

-vs-

MONTANA POWER COMPANY,

Defendant and Respondent.

---

Appeal from: District Court of the Sixth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

David W. DePuy, Livingston, Montana
Bennett and Bennett, Bozeman, Montana
Lyman H. Bennett, Jr. appeared and Lyman H. Bennett, III
argued, Bozeman, Montana

For Respondent:

Berg, Angel, Andriolo and Morgan, Bozeman, Montana
Richard J. Andriolo appeared and Gregory O. Morgan
argued, Bozeman, Montana

---

Submitted: April 24, 1974

Decided: JUL 24 1974

Filed: JUL 24 1974

Thomas J. Kearney
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

Hash Construction Company brought action in the district court of Park County to recover damages in the amount of $46,793.83 for a fire originating in the electrical meter box on its property east of Livingston, Montana on August 29, 1970, and to which defendant Montana Power Company provided the electricity. At the close of all the evidence, plaintiff moved for a directed verdict on the basis of res ipsa loquitur, which motion was taken under advisement. The case then was submitted to the jury; a verdict in favor of defendant Montana Power Company was returned; and judgment was entered accordingly. Plaintiff thereupon moved for judgment notwithstanding the verdict, again on the basis of res ipsa loquitur, or, in the alternative, for a new trial. The motion was denied.

Plaintiff subsequently perfected this appeal and raises three issues: (1) Whether the district court erred in failing to grant a directed verdict in favor of plaintiff on the basis of res ipsa loquitur. (2) Whether the district court erred in failing to grant a directed verdict for plaintiff on grounds of allegations of negligence. (3) Whether the evidence was sufficient to support a jury verdict in favor of defendant.

The facts are:

An earlier fire occurred in the meter box located on plaintiff's property in February 1970. Walford Lindquist, an employee of Montana Power Company, came to plaintiff's property to disconnect the power and remove the damaged meter. After removing the meter, he discovered the remains of a dead mouse in the meter box and thought it to be the possible cause of the fire. Further investigation by Lindquist revealed an access from within plaintiff's building to the meter box which would allow foreign objects to enter through the rear of the meter box.

- 2 -

Plaintiff hired Cissel Electric to perform the work of replacing the damaged meter box. Lindquist showed Cissel Electric the dead mouse he had found in it. After Cissel Electric had completed its work, Lindquist returned to plaintiff's property, connected the service drop, and installed a new meter.

The second fire, which occurred some six months after the new box and meter had been installed, was investigated by Dr. J. L. Knox, an electrical engineer at Montana State University, and his report was admitted into evidence on behalf of plaintiff. In essence, Dr. Knox testified that, in his opinion, the fire was caused by a power surge coming over and through the power line owned by defendant, and when the power surge reached plaintiff's property, it resulted in a short circuit and a fire. He hypothesized that the collision of descending and returning excessive waves of electricity during the power surge was responsible for melting the service wire which came from defendant's utility pole into the weatherhead on plaintiff's building.

An investigation of the fire was also conducted by Glen Wheeler, an electrical engineer employed by defendant; Robert Leo, an electrical engineer at Montana State University; and John Yost, an electrician employed by Montana Power Company. Wheeler and Yost testified for defendant and they disagreed with the surge theory proposed by Dr. Knox. In their opinion, this fire was the result of foreign materials accumulating in the meter box which resulted in arcing and subsequently fire. Leo in particular testified that because of/lightning arresters and transformers in the line, a power surge of the magnitude testified to by Dr. Knox would have dissipated by the time it reached plaintiff's property. Neither Wheeler nor Leo was able to find any evidence to support Dr. Knox's surge theory. There were no unusual fluctuations on defendant's voltage chart which monitors the power

- 3 -

system at Livingston, nor records indicating that other customers on the line serving plaintiff's property also complained of trouble on the day of the fire. Yost testified that, in his opinion, the break in the service wire was due to stress and not melting.

This Court many times has said that certain elements are necessary in res ipsa loquitur cases: (1) the defendant having exclusive control of the offending instrumentation possesses the knowledge of the cause of the accident, and the plaintiff does not; (2) the injured person must be without fault; (3) that the injury would not ordinarily occur if the defendant, the one having control, had used ordinary care; and (4) the thing that causes the injury must be in the exclusive control of the defendant at the time of the injury. Bostwick v. Butte Motor Co., 145 Mont. 570, 589, 590, 403 P.2d 614. We hold the doctrine of res ipsa loquitur is not appropriate in the instant case and consequently the district court did not err in denying plaintiff's motion for a directed verdict.

Superior position of defendant. Plaintiff's contention that defendant is in a better position to explain the fire of August 29, 1970, is not persuasive. The weatherhead meter box and related wiring had all been installed by the electrician at the request of plaintiff. Plaintiff complained that after the meter was installed it did not have any opportunity to inspect the box, yet Hash, plaintiff's owner, testified unequivocally that he did not at any time after the box was installed make an effort to inspect it. The box was on plaintiff's building, supplying power to its machinery and lighting, but nevertheless it is argued that defendant is in a better position than plaintiff to explain the cause of the accident. The meter box was separated by a thin wall from the inside of the building. Through that

- 4 -

wall, on an earlier occasion, a mouse entered, apparently causing electrical damage. It cannot be denied that plaintiff is in exclusive control of the wiring, circuit breakers and other electrical devices within the building. Therefore, it is senseless to argue that it is not in control of the weatherhead and meter box installed by an independent electrician at its request.

To hold that defendant must supply an explanation for every fire that occurs on private property to which it supplies electricity, when it can be shown that the fire developed through arcing in the meter box would have virtually the force and effect of making defendant strictly liable for injuries which occur without proof of negligence on its part.

Even if it might be determined that a power company is in the same relative position to the general public as that of a common carrier and, therefore, as a matter of public policy, it should be required to explain accidents which occur through its equipment, this case does not fall within that principle. The fire occurred on plaintiff's property within equipment owned by it. There is no reason to believe that defendant is in a better position to explain how the accident happened than is plaintiff.

Faultless plaintiff. The evidence reveals that plaintiff was not entirely free from responsibility for the fire. On cross-examination Dr. Knox, plaintiff's expert witness, testified:

> "A. It is my understanding that the weatherhead, the conduit, the cable leading to it and the meter base are all installed by the electrician hired by the consumer.

> "Q. That would be the owner's electrician installs what you have marked here as the weatherhead, the wires that come out of the weatherhead and the wires that extend down that weatherhead into the meter base, together with all of the other wiring from the meter base into the building? A. That is my understanding of the current practice."

Dr. Knox's expert opinion was that the most likely cause

of the arcing within the meter box was a power surge, yet upon further cross-examination he testified:

> "Q. Dr. Knox, have you had much experience work-
> ing with 480 volt circuits? A. I have had a
> reasonable amount of experience. My work with
> Firestone Tire and Rubber Company involved quite
> a lot of 480, or 440 it was in those days.
>
> "Q. Now Dr. Knox, could moisture accumulating
> in the meter box cause a short within the meter
> base here? What I am referring to is not the
> meter but the meter base, which is Plaintiff's
> Exhibit 2? A. An accumulation of moisture coupled
> with contaminants that might get into the moisture
> could cause a bridging across insulation and
> eventually causing a breakdown, yes.
>
> "Q. So a short within this box could have occurred
> from moisture accumulation within the box? A.
> Moisture plus other contaminants. Pure water is
> not a conductor.
>
> "Q. So that also is another explanation for the
> short which occurred in this box on August 29,
> 1970, as well as your power surge explanation?
> A. That would be a possibility.
>
> "Q. Now what about a loose connection within
> the box, Dr. Knox? A. Yes, any connection between
> ground and one of the hot conductors could cause
> an arcing to be established.
>
> "Q. What about foreign matter in there, dirt,
> dust, straw, this type of thing; a mouse. A.
> Foreign matter of sufficient conductivity in
> the right places could cause it."

The insurance report prepared by Dr. Knox indicated that incident to an earlier fire, a short in the meter box had been caused by a mouse. There is ample evidence that the meter box and related parts were vulnerable to foreign objects entering. The jury could reasonably conclude that moisture, a loose con-nection, a mouse, or any kind of foreign matter could have caused arcing which resulted in the later fire.

<u>Evidence the injury would not ordinarily occur without negligence.</u> There is a dearth of evidence in the record tending to establish that the fire was an accident which ordinarily would not have happened without negligence on the part of defendant.

Plaintiff attempts to satisfy the third element of <u>res</u>

ipsa loquitur solely on the basis of Dr. Knox's hypothesized power surge. Yet there is no credible evidence that a power surge in and of itself is a result of negligence on the part of defendant. Moreover, the jury apparently doubted whether in fact there was a power surge. None was noticed by other utility customers or brought to defendant's attention on the day of the fire. There were no defects found in the service lines, meter or transmission facilities. August 29, 1970 was a clear day in the Livingston area, with no storms or other turbulence.

The jury rejected the power surge theory, as it had a perfect right to do, since it was contradicted and not supported by other evidence. There was no substantial evidence upon which the district court could conclude that reasonable men might find defendant responsible through its negligence for a power surge.

Since we have concluded this is not a res ipsa loquitur case, the question of the procedural impact of that doctrine in Montana need not be considered.

The final issue is the sufficiency of the evidence to support the verdict. A defendant is not required to rebut all of the plaintiff's evidence but instead need only present evidence from which reasonable men could conclude his freedom from negligence. In our view, the discussion of evidence set out above satisfies this test in that it establishes there was ample evidence to support the jury verdict for defendant.

The jury was given the opportunity to consider all of the evidence and was under instructions which were favorable to plaintiff. The jury determined defendant was not liable. We agree.

Whether the district court erred in failing to grant plaintiff's motion for a directed verdict on the grounds of allegations of negligence can be disposed of simply: There is no indication this issue was ever raised in the district court. It

- 7 -

is fundamental that objections urged for the first time on appeal will not be considered by this Court.

The judgment is affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices